## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WASHINGTON, D.C.

ROBERT M. MILLER,

                    *Plaintiff-Petitioner,*

v.

MERIT SYSTEMS PROTECTION BOARD;
CATHY A. HARRIS, Acting Chairman,

                    *Defendants-Respondents.*

Case: 1:23–cv–00015
Assigned To : Nichols, Carl J.
Assign. Date : 1/3/2023
Description: Pro Se Gen. Civ. (F–DECK)

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## AND EMERGENCY PETITION FOR A WRIT OF MANDAMUS

**COMES NOW**, Plaintiff Robert M. Miller, *pro se*, seeking declaratory and injunctive relief, and an emergency writ of mandamus to Merit Systems Protection Board ("MSPB" or "Board") and Cathy A. Harris ordering them to immediately perform ministerial and adjudicative duties required by law, rule, and regulation.

## PARTIES

1.    At all times relevant to this petition, Plaintiff was employed by the Federal Deposit Insurance Corporation ("FDIC" or "Agency") as a Senior Financial Economist, CG-0110-14, at FDIC Headquarters in Washington, D.C.

2.    Defendant-Respondent MSPB is a federal government agency headquartered in Washington, D.C.

3.    Defendant-Respondent Cathy A. Harris is the Acting Chairman of the MSPB.

4.    FDIC is a federal agency headquartered in Washington, D.C. that will be affected by granting the writ.

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction under 28 U.S.C. §1331.

6.      This Court has jurisdiction to issue a writ of mandamus pursuant to 28 U.S.C. §1361.

7.      Declaratory relief is available pursuant to 28 U.S.C. §2201—2202.

8.      This Court has jurisdiction to order declaratory and injunctive relief for legal wrongs or adverse effects because of Defendants' actions or inactions in their official capacities or under color of legal authority, and Congress waived sovereign immunity. 5 U.S.C. §702.

9.      This Court has authority to vacate MSPB decisions wrongfully denying Plaintiff due process under Fed.R.Civ.P. 60 and the U.S. Const. amend. V.

10.     Venue is proper under 28 U.S.C. §1391(e)(1) as MSPB and FDIC are agencies headquartered in Washington, D.C.; Defendant Harris is Acting Chairman of the MSPB; and a substantial part of the events giving rise to the claims occurred in or near Washington, D.C.; and Plaintiff works for FDIC in Washington, D.C.

11.     This Court has jurisdiction to issue a writ of mandamus because more than 120 days have passed after Plaintiff raised his mixed case appeal without a final order from the Board. 5 U.S.C. §7702(e)(1)(B). *Butler v. West*, 164 F.3d 634, 639—642 (D.C. Cir. 1999). Alternatively, the Court may construe denial of interim relief a final decision because it has instantaneous adverse effects on Plaintiff that cannot be remedied by a later decision by Defendants on his *Motion for Interim Relief*. Exhibit 5.

12.     A panel of the U.S. Court of Appeals for the District of Columbia, on petition for mandamus relief, determined that district court is the appropriate jurisdiction for Plaintiff's petition. *In re Robert M. Miller*, 22-1232 (D.C. Cir. Nov. 10, 2022), *Pet. Rehearing En Banc denied*, Dec. 27, 2022. Exhibit 1.

## STATUTORY AND REGULATORY BACKGROUND

13.     Title 5, Section 2302(a)(2)(A)(i)—(xii) provides a list of prohibited personnel practices in federal employment. As relevant to this petition, Plaintiff alleged, and record evidence shows, his employer FDIC took (iii) an action under chapter 75 of this title, to wit: an indefinite suspension; (x) a decision to order psychiatric testing or examination; (xii) other significant changes in duties, responsibilities, or working conditions, to wit: indefinite administrative leave lasting seven months.

14.     MSPB has long held that offers of psychiatric examination under threat of disciplinary action, such as the instant case, violate 5 U.S.C. §2302(a)(2)(A)(x). See *Agoranos v. Dep't of Justice*, 2013 M.S.P.B. 41 (2013); *Diefenderfer v. Dep't of Trans.*, 108 M.S.P.R. 651 (2008).

15.     Title 5, Section 2302(b)(8) and (b)(9)(A)(i) provides that it is unlawful for an agency to take or threaten to take any of the personnel actions described above because of any disclosure of information by an employee which the employee reasonably believes evidences any violation of any law, rule, or regulation; or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety, i.e. whistleblowing.

16.     The Whistleblower Protection Act, as amended, improves protection for Federal employees, prevents reprisals, and mandates employees should not suffer adverse consequences as a result of prohibited personnel practices; WPA, Pub. L. 101-12 §2(b), 103 Stat. 16. Protection of whistleblowers remains the paramount consideration. *Id.* §2(b)(2)(C).

17.     When an employee has been affected by an action that the employee may appeal to the Board and alleges that a basis for the action was discrimination prohibited by Title VII or the Rehabilitation Act, the Board shall within 120 days of the filing of the appeal (or after later raising the issue) decide both the issue of discrimination and the appealable action. 5 U.S.C. §7702(a)(1);

5 C.F.R. §1201.156. This type of case is known as a *mixed case* appeal of civil service and discrimination claims.

18.     If the Board fails to issue a final decision in a mixed case within 120 days, the appeal becomes judicially reviewable in district court. 5 U.S.C. §7702(e)(1)(B). *See Butler v. West*, 164 F.3d 634, 639 (D.C. Cir. 1999).

19.     In enacting the Whistleblower Protection Act of 1989, Pub. L. 101-12 (1989), Congress explicitly provided that whistleblowers prevailing in their appeals are entitled to interim relief pending the outcome of any petition for review. 103 Stat. 33, Sec. 6.

20.     Interim relief consists of the relief ordered in the initial decision effective on the date of that decision. However, if a Board order provides that an employee will return to the workplace, and the agency makes a determination that the employee's return to the workplace will be unduly disruptive, then the agency can prevent the employee's return to duty; however, agency must provide "pay, compensation, and all other benefits as terms and conditions of employment." 5 U.S.C. §7701(b)(2)(B). The employee is not entitled to back pay before the decision is final. *Id.* at (b)(2)(C).

21.     "The interim relief statute was added as part of the Whistleblower Protection Act of 1989. Pub. L. No. 101-12, § 6, 103 Stat. 16, 33-34 (1989). The Senate Report explained, 'This section is a change to current law in that under current law, employees are not granted any relief ordered by a regional office of the Board until they win at the full Board.' S. Rep. No. 100,413, at 35 (1988). Senator Pryor provided some clarification on this purpose: '[The Senate bill] provides interim relief to those whistleblowers who receive a favorable decision at the . . . MSPB, regional level. This ensures that an employee will not suffer undue hardship waiting for a final decision from the

MSPB.' 134 Cong. Rec. 29,543 (1988) (statement of Sen. Pryor). *Coy v. Dep't of the Treasury*, No. 2021-2098, at *8 (Fed. Cir. Aug. 9, 2022).

22.    "It is a fundamental element of interim relief that the appellant be reinstated with pay effective as of the date of the initial decision." *Zygas v. United States Postal Service*, 115 M.S.P.R. 397 (2011) at ¶ 13; citing *Armstrong v. Dep't of Justice*, 107 M.S.P.R. 375 (2007) at ¶ 13, citing *Herrin v. Dep't of the Air Force*, 95 M.S.P.R. 536, ¶ 15 and *Lambert v. Department of the Navy*, 85 M.S.P.R. 130, ¶ 7 (2000).

23.    The Board has expressly adopted the *Buckhannon* standard of a prevailing party. *Baldwin v. Dep't of Veterans Affairs*, 115 MSPR 413 ¶ 11 (2010); *Krafsur v. Soc. Sec. Admin.*, 2015 MSPB 55 ¶ 8 (2015). "[A] 'prevailing party' is one who has been awarded some relief by the court ...." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)." *Ashraf-Hassan v. Embassy of Fr. in U.S.*, 189 F. Supp. 3d 48, 55 (D.D.C. 2016). A party prevails if he obtains an 'enforceable order' resulting in a 'material alteration of the legal relationship of the parties.'" *Buckhannon* at 598, 604.

24.    Title 5, C.F.R. §1201.111(b)(4) provides that, "Each initial decision will contain…a statement, if the appellant is the prevailing party, as to whether interim relief is provided effective upon the date of the decision, pending the outcome of any petition for review filed by another party…"[1]

25.    "Under 5 U.S.C. §7701(b)(2), if the appellant is the prevailing party, the initial decision will provide appropriate interim relief to the appellant effective upon the date of the initial decision and remaining in effect until the date of the final order of the Board on any petition for review,

---

[1] Title 5, C.F.R. §1201.111(b)(4) violates 5 U.S.C. §7701(b)(2)(A) because Congress provided interim relief to prevailing appellants if *any* party files a PFR, not just the opposing party.

unless the judge determines that the granting of interim relief is not appropriate. The agency may decline to return the appellant to his or her place of employment if it determines that the return or presence of the appellant will be unduly disruptive to the work environment. However, pay and benefits must be provided." 5 C.F.R. §1201.111(c)(1).

26.     MSPB has found interim relief inappropriate in very limited circumstances, such as "where it is clearly impractical or is outside the scope of the Board's authority to provide the relief ordered." *Norton v. Department of Veterans Affairs*, 112 M.S.P.R. 248 (2009); *Edwards v. Department of the Navy*, 62 M.S.P.R. 174, 177 (1994) (indefinite suspension concluded and appellant returned to paid duty status). *Sink v. Department of Energy*, 110 M.S.P.R. 153 (2008) (involuntary retirement appeal where employee's position was duly abolished); *Armstrong v. Department of Justice*, 107 M.S.P.R. 375 (2007) (interim relief of promotion where appellant resigned and transferred to another agency); *Davis v. Department of Justice*, 61 M.S.P.R. 92 (where appellant receives workers' compensation benefits and restoration violates 5 U.S.C. §8116(a)), aff'd, 43 F.3d 1485 (Fed. Cir. 1994) (Table); *Siu v. Office of Personnel Management*, 59 M.S.P.R. 394 (1993) (caution when relief may result in payment contravening OPM's statutory authority).

27.     MSPB has authority to make regulations for processing of appeals. 5 U.S.C. §7701(a).

28.     "Upon the submission of any appeal to the Board under this section, the Board, through reference to such categories of cases, or other means, as it determines appropriate, shall establish and announce publicly the date by which it intends to complete action on the matter. Such date shall assure expeditious consideration of the appeal, consistent with the interests of fairness and other priorities of the Board. If the Board fails to complete action on the appeal by the announced date, and the expected delay will exceed 30 days, the Board shall publicly announce the new date

by which it intends to complete action on the appeal...It shall be the duty of the Board, an administrative law judge, or employee designated by the Board to hear any proceeding under this section to expedite to the extent practicable that proceeding" 5 U.S.C. §7701(i)(1), (4).

29.     An MSPB administrative judge may suspend case processing for 30 days twice, for a total of no more than 60 days. 5 C.F.R. §1201.28.

30.     Title 5, C.F.R. §339.103 provides that any order or offer of medical examination must comply with the Americans with Disabilities Act and Rehabilitation Act.

31.     Title 5, C.F.R. §339.104 provides that "An acceptable diagnosis must include the information identified by the agency as necessary and relevant to its employment decision."

32.     Title 5, C.F.R. §339.303 provides that when an agency offers a psychiatric examination, "it must inform the applicant or employee in writing of its reasons for doing so, the consequences of failure to cooperate, and the right to submit medical information from his or her private physician or practitioner."

33.     Once an employee has provided an agency the information it requested, the agency is not authorized to seek more information. *Zygas* at ¶ 22.

34.     An agency may not discipline an employee more than once on the same factual bases. See *Hansen v. Dep't of the Army*, 620 F. App'x 956, 4 (Fed. Cir. 2015); *Nguyen v. Dep't of Homeland Sec.*, 737 F.3d 711, 716 (Fed. Cir. 2013); *Westbrook v. Department of the Air Force*, 77 M.S.P.R. 149, 155 (1997); *Gartner v. Dep't of the Army,* 104 M.S.P.R. 463, ¶¶ 5-6 (2007); *Adamek v. U.S. Postal Service*, 13 M.S.P.R. 224, 226 (1982).

35.     An agency can only take additional disciplinary action during the period of interim relief "so long as that action is not inconsistent with the initial decision." *Coy v. Dep't of the Treasury*, No. 2021-2098, at *7 (Fed. Cir. Aug. 9, 2022).

36.    Employees are protected from disciplinary action when making complaints in a rude or impertinent manner in emotional, confrontational contexts. *Greenspan v. Department of Veterans Affairs*, 464 F.3d 1297, 1299 (Fed. Cir. 2006) (whistleblowing); *Hamilton v. Dep't of Veterans Affairs*, 2011 MSPB 35 (2011) at ¶ 11 (whistleblowing); *Daigle v. Department of Veterans Affairs*, 84 M.S.P.R. 625, 628 (1999) (EEO counseling); *Special Counsel v. Nielson*, 71 M.S.P.R. 161, 175-76 (1996) (grievance process).

37.    A "ministerial act" is "[o]ne which a person or board performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority without regard to or exercise of his or their own judgment upon the propriety of the act being done." Black's Law Dictionary 899 (5th ed. 1979) ("Black's") Black's provided a definition of "ministerial" as "[t]hat which involves obedience to instructions, but demands no special discretion, judgment, or skill." *Id.*

38.    "A ministerial duty is one that is nondiscretionary." *Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir. 1996); *West v. Jackson*, 538 F. Supp. 2d 12, 22 (D.D.C. 2008).

39.    Mandamus relief is warranted "when a plaintiff demonstrates (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *Nyambal v. Mnuchin*, 245 F. Supp. 3d 217, 223 (D.D.C. 2017).

40.    Title 5, U.S.C. §2301(b)(2) prohibits discrimination on the basis of political affiliation in federal hiring, retention, and promotion.

41.    FDIC can fire Plaintiff for a pattern or practice of defalcation regarding obligations to insured depository institutions or for causing a substantial loss to federal deposit insurance funds. *See* 12 C.F.R. §336.4(a)(3)-(4); §336.5(a)(3)-(4); and §336.8.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

42.     On November 13, 2019, and January 9, 2020, Plaintiff made protected whistleblower disclosures to FDIC's Chairman, General Counsel, Inspector General, two United States Senators, and a reporter for the Wall Street Journal.

43.     On December 2, 2019, the FDIC Office of the Inspector General ("OIG") acknowledged receipt of Plaintiff's disclosures.

44.     On December 5, 2019, FDIC conducted a search of Plaintiff's workplace internet activities ostensibly seeking evidence Plaintiff gathered information for his November 13, 2019, disclosures during duty hours. The search found no such evidence.

45.     On January 10, 2020, FDIC held an investigatory interview of Plaintiff based on its purported belief that Plaintiff's disclosures indicated he was "mentally unstable" and "posed a threat to himself and others."

46.     On January 11, 2020, FDIC put Plaintiff on administrative leave which became indefinite on January 17, 2020.

47.     FDIC barred Plaintiff from entering FDIC facilities or accessing its networks or systems.

48.     FDIC's intranet has information about ongoing operations, events, programs; training, detail and promotion opportunities; access to electronic systems for requesting leave, educational benefits, and reimbursement of professional dues. Benefits of employment include access to an employee's government email account and organizational directories with which employees can communicate with fellow employees for mutual aid and protection and their labor union, and to seek offices for the enjoyment of benefits such as human resources, payroll, benefits, the Ombudsman, the Equal Employment Opportunity office, the Office of the Inspector General, and management to whom an employee may raise grievances. The intranet includes information for

the benefit of all employees, such as policies, directives, corporate- and division-wide notices and announcements, and changes in the organizational structure and staffing.

49.     Plaintiff's email account has thousands of emails he has saved since his employment began in 2008, including hundreds of emails relating to his complaints and disclosures. Defendants' intranet contains virtual personal and shared drives in which Plaintiff stored documents, including evidence supporting his claims, and SharePoint drives containing collaborative documents Plaintiff worked on.

50.     Plaintiff's agency-issued laptop computer had essential documents, including evidence for his complaints and grievances, on its hard drive. The laptop computer gave Plaintiff remote access to FDIC's intranet from home.

51.     On January 24, 2020, and on February 6, 2020, FDIC directed Plaintiff under threat of disciplinary action to undergo a psychiatric examination by one of three agency-designated doctors.

52.     FDIC's demands did not state the reasons for the psychiatric examination other than "recent events." FDIC did not state what information FDIC was seeking in the psychiatric examination.

53.     Plaintiff asked FDIC what "recent events" it was referring to, and FDIC never responded.

54.     Plaintiff objected to the agency-designated doctors alleging FDIC selected them to be biased by the nature of his protected disclosures. Plaintiff requested FDIC expand the list of doctors, which FDIC refused to do. FDIC threatened disciplinary action for Plaintiff's objection to the doctors.

55.     On February 4, 2020, FDIC demanded Plaintiff return his work-issued laptop computer. On February 5, 2020, FDIC conducted a forensic search of that computer.

56.     Plaintiff requested FDIC voluntarily stay personnel actions until Office of Special Counsel decided whether to request a stay. FDIC never responded.

57.     On March 9, 2020, FDIC issued a *Notice of Proposed Indefinite Suspension* ("*Proposal*").

58.     On March 25, 2020, Plaintiff submitted his *Response* to the *Proposal* orally and in writing to the Deciding Official.

59.     On April 10, 2020, Deciding Official gave Plaintiff "additional flexibility" to obtain medical information from a doctor of his own choosing.

60.     Deciding Official said, "It is up to you whether you submit medical information, and what information you include."

61.     On June 2, 2020, Plaintiff submitted to Deciding Official a May 18, 2020 letter from his psychiatrist describing Plaintiff's conditions as mild, his prognosis was good, Plaintiff was compliant with treatment, his symptoms were controlled by medication, he was safe and stable, he exhibited no bizarre or agitated behavior, he expressed no suicidal or homicidal ideations, his behavior was always appropriate, she had no concerns for his safety, he was safe for outpatient care, and that he was ready to return to his duties.

62.     On June 15, 2020, Deciding Official requested Plaintiff sign an *Authorization for Use or Disclosure of Personal Health Information* that would provide FDIC's contractor unlimited access to Plaintiff's medical records. Deciding Official wanted the *Authorization* so FDIC's contractor could ask Plaintiff's doctor additional questions.

63.     Plaintiff said he was hesitant to sign a blanket release of medical information for questions he had not read and possibly asked by telephone where there would be no written record. Plaintiff asked to know what questions FDIC's contractor would ask his doctor.

64.     On June 19, 2020, Office of Special Counsel closed its investigation of Plaintiff's whistleblower reprisal complaint, exhausting his administrative remedies.

65.     On June 23, 2020, Deciding Official told Plaintiff FDIC's contractor wished to ask Plaintiff's doctor: "(1) You [sic] letter mentioned that you would be meeting with Mr. Miller on May 27th for an appointment. Did the results of your May 27th appointment (or any appointments with Mr. Miller since) change the assessment you provided dated May 18, 2020? If so, how? (2) Have you reviewed, and/or has Mr. Miller discussed with you his recent email interactions with FDIC leadership as shown in the attached email communications [attach email communications from Tabs 2, 3, 5, 6, 7 of proposed suspension]? Does your review of these communications change the assessment you provided on May 18, 2020? If so, how?"

66.     Plaintiff objected to the second question, again alleging FDIC was attempting to prejudice his doctor with the nature of his protected whistleblower disclosures

67.     On July 3, 2020, Plaintiff filed a whistleblower reprisal individual right of action ("IRA") appeal with MSPB.

68.     On July 7, 2020, the administrative judge issued an Acknowledgment Order stating that "appellant and the agency are entitled to have this appeal adjudicated as quickly as possible, usually within 120 days (*see* 5 U.S.C. §7702(a)(1))." The Order stated the administrative judge may suspend case processing twice for 30 days each but no more than a total of 60 days. *See* 5 C.F.R. §1201.28.

69.     At no time did the administrative judge establish and announce publicly the date by which she intended to complete action on the matter. *See* 5 U.S.C. §7701(i)(1).

70.    On July 24, 2020, Plaintiff moved for a preliminary injunction in *Miller v. McWilliams*, 1:20-cv-671 (E.D. Va.) to stay agency personnel actions in the absence and inadequacy of the Board, which had no sitting members. See 5 U.S.C. §703.

71.    On August 4, 2020, the EDVA court denied the preliminary injunction.

72.    Just hours later, on August 5, 2020, FDIC's Deciding Official indefinitely suspended Plaintiff until such time as he provided FDIC sufficient medical information.

73.    On August 7, 2020, Plaintiff filed an adverse action appeal with MSPB for the indefinite suspension.

74.    On August 25, 2020, Plaintiff asked Deciding Official, "Please give me exact guidance of what you need from my doctor to satisfy you that I am not unstable and do not pose a threat to myself or others."

75.    On August 27, 2020, Deciding Official repeated the same two questions as June 23, 2020.

76.    On October 7, 2020, the administrative judge ordered the first suspension of case processing for 30 days.

77.    On January 6, 2021, the MSPB administrative judge granted Plaintiff's motion to add affirmative defenses of discrimination and retaliation under Title VII and the Rehabilitation Act, making his appeal a *mixed case* of civil service and discrimination claims.

78.    On January 6, 2021, the administrative judge ordered the second suspension of case processing for 30 days.

79.    On March 31, 2021, the administrative judge violated 5 C.F.R. §1201.28 ordering the third suspension of case processing.

80.    On April 8, 2021, Plaintiff's psychiatrist issued an updated psychiatric evaluation answering FDIC's questions. Plaintiff submitted this letter to MSPB and FDIC the same day. The

doctor's letter reiterated her May 18, 2020 letter, adding she had reviewed Plaintiff's communications with FDIC, and that her professional medical opinion was unchanged.

81.    On April 22 and 26, 2021, MSPB held a hearing on Plaintiff's whistleblower reprisal, adverse action, and discrimination appeals.

82.    On May 7, 2021, more than 120 days had passed since Plaintiff raised his mixed case without MSPB issuing a final order.

83.    On September 28, 2021, Plaintiff filed a *Request for Status Update on Decision*, requesting the administrative judge notify the parties of when to expect the initial decision. Plaintiff stated the delay was "having extraordinarily adverse effects on Appellant's finances…"

84.    On September 30, 2021, the administrative judge issued an initial decision ("ID"). Exhibit 2.

85.    MSPB issued the initial decision 157 days after the hearing concluded which, by itself, exceeded the statutory and regulatory standards of 120 days. The entire adverse action appeal took 419 days, or 359 days excluding two 30-day case suspensions – 239 days overdue.

86.    The ID upheld FDIC's indefinite suspension of Plaintiff. ID at 28. Concerning Plaintiff's affirmative defense of whistleblower retaliation, ID held Plaintiff proved his *prima facie* case that he engaged in protected whistleblowing activities, and those were a contributing factor in FDIC's indefinite suspension of him. ID at 59. ID denied relief holding FDIC had met its burden by clear and convincing evidence it would have taken the same actions absent whistleblowing. ID at 60.

87.    However, ID held Plaintiff had satisfied all FDIC demands for medical information on April 8, 2021 and ordered FDIC to cancel Plaintiff's suspension as of that date. ID at 30, 61.

88.     This decision made Plaintiff a *prevailing party* under Board case law because he received some relief on the merits of his appeals, and canceling his suspension was a material change in the legal relationship between the parties. *Buckhannon, supra.*

89.     The ID would become the Board's final decision if neither party petitioned for review ("PFR") by November 4, 2021. ID at 62.

90.     On November 4, 2021, FDIC petitioned for review to the Board to reverse the judge's order to cancel the suspension.

91.     When FDIC did this, Plaintiff became entitled to interim relief. See 5 U.S.C. §7701(b)(2).

92.     In violation of 5 C.F.R. §1201.111(b)(4), the administrative judge failed to perform a ministerial duty to include in her initial decision a statement concerning interim relief.

93.     The Chief Administrative Judge of the Washington Regional Office failed in his duty of pre-issuance review of ID's in complex cases by GS-15 administrative judges, such as the instant case. Exhibit 3: *MSPB Judge's Handbook* at 54, ¶ 3a.

94.     The Office of Regional Operations and the Washington Regional Office failed to perform their delegated ministerial duties to "Review decisions of administrative judges for quality, timeliness, and consistency with applicable laws, regulations, and policies." Exhibit 4: *Org. Func. & Deleg. of Authority*, p. 5, ¶ 1.7.7.

95.     The Washington Regional Office and the Office of Regional Operations had delegated ministerial duties to ensure the timeliness of the initial decision. Exh. 4 at p. 5, 1.7.7.

96.     The Clerk of the Board had delegated ministerial duties to "Review all Board orders, opinions and orders, and decisions for compliance with ...consistency with Board law..." Exh. 4 at p. 8, ¶ 1.11.2.

97.     The Clerk of the Board had delegated adjudicative duties to "rule on … procedural motions." Exh. 4 at p. 21, ¶ 2.3.5.6.

98.     FDIC declined to provide interim relief without an order from Defendants.

99.     On December 3, 2021, Plaintiff filed his own petition for review of the Board's decisions in district court. *Miller v. Gruenberg*, 1:21-cv-03035 (D.D.C.).

100.    On February 17, 2022, Plaintiff filed a *Motion for Interim Relief* to the Board on the docket of FDIC's PFR. Exhibit 5.

101.    FDIC did not respond to the *Motion for Interim Relief*, conceding the motion. *Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015).

102.    On or about March 12, 2022, Plaintiff emailed Defendants requesting a favorable decision on his motion. Exhibit 6.

103.    On March 15, 2022, the Clerk of the Board declined to rule on the motion, saying the Board would consider the motion when it decides on FDIC's PFR. *Id.*

104.    The Clerk stated MSPB has no regulations or procedures for expedited review. *Id.*

105.    On August 27, 2022, Petitioner contacted the MSPB General Counsel's office seeking their review of the law and to take action to avoid the filing of this petition. The General Counsel's office did not respond.

106.    After more than five years, the Board obtained a quorum on March 4, 2022, when Congress confirmed two members to the Board. Congress confirmed the Acting Chairman on May 25, 2022.

107.    Because of the enormous case backlog of more than 3,600 petitions for review and other cases, the time for the Board to issue a final decision on FDIC's PFR and Plaintiff's *Motion for Interim Relief* is lengthy and indefinite.

108.    Plaintiff has not been paid for almost 29 months from August 5, 2020, costing him approximately $482,040 of gross pay.

109.    Plaintiff has not received his entitlement to interim relief for more than 15 months from September 30, 2021, costing him approximately $249,331 of gross pay.

110.    Plaintiff is on the verge of debt default, foreclosure, and bankruptcy with less than $7,500 in his checking and savings accounts, a monthly budget deficit of about $7,500, and virtually no lines of credit remaining.

111.    Agency can fire Plaintiff for defalcation of just debts or for causing a loss to an insured financial institution. 12 C.F.R. §336.5(a)(3)-(4) and 12 C.F.R. §336.8.

112.    Since 2012, Plaintiff has filed fifteen appeals to MSPB.

113.    Based on publicly available sources of information,[2] Plaintiff determined that 12 out of these 14 administrative judges (86.7%) were Democrats, one was Republican (6.7%), and one had unknown political affiliation (6.7%).

114.    MSPB dismissed or denied relief in all fifteen appeals.

115.    Plaintiff identified the political affiliations of 45 out of 69 current or recent administrative judges (65.2%). Of those identified, 75.6% are Democrats, 15.6% are Republicans, and 8.9% are unaffiliated. That is, Democrats outnumber Republicans among administrative judges 4.9 to 1.

116.    Data from the Center for Responsive Politics, a.k.a. OpenSecrets.org, and the Federal Election Commission show that in all campaign cycles since 1990, thirty-nine MSPB employees (80% of total donors), including twenty-six administrative judges, made 220 donations (94% of total number of donations) summing to $31,960 (82% of total amount donated) to Democrat

---

[2] Federal Election Commission, Center for Responsive Politics, voter registrations, MyLife.com, Facebook.com, Google searches, and other public sources.

candidates, party, PACs, or causes.

117.    During the same period, only ten employees (20% of total donors) made thirteen donations (6% of total number of donations), including two administrative judges,[3] summing to $6,970 (27% of total amount donated) to Republican candidates, party, PACs, or causes.

118.    At least 7 of 11 (64%) current or recent administrative judges in the San Francisco Regional Office are Democrats, and the rest (36%) have unknown affiliation.

119.    At least 8 of 11 (72.7%) MSPB administrative judges in the Washington Regional Office are Democrats, 2 of 11 (18.2%) are Republican, and 1 (9.1%) has unknown political affiliation.

120.    Approximately 29% of Americans self-identified as Democrats, 27% as Republicans, and 42% as independents.[4,5]

121.    Every MSPB Regional Office except Dallas has a share of Democrat administrative judges exceeding the national share of Democrats. In Dallas, only 3 of 8 political affiliations are known.

122.    MSPB nonrandomly assigned six cases to Democrat administrative judge Richard Slizeski in the San Francisco Regional Office. No other judges in that region presided over any of Plaintiff's appeals.

123.    A Democrat Chief Administrative Judge in the San Francisco Regional Office, Amy Dunning, twice deleted Plaintiff's first appeal from the docket, and Plaintiff had to complain to the Office of Regional Operations to get the appeal docketed to obtain a decision.

---

[3] One administrative judge made one donation to a Republican in 2016 and six donations to Democrats from 2020 to 2022.

[4] https://news.gallup.com/poll/388781/political-party-preferences-shifted-greatly-during-2021.aspx.

[5] https://docs.google.com/spreadsheets/d/1v58Nt6SW832ZUq7xLI6N8qdDs3qN4qWoDU-2EyEOGZg/edit#gid=2104546316

124.    No MSPB administrative judge has ever granted a motion to compel in any appeals despite obvious FDIC failures to produce discovery in good faith.

125.    In two hearings denying relief, Democrat administrative judge Richard Slizeski blocked Plaintiff from calling favorable witnesses and admitting exhibits supporting Plaintiff's burdens of proof and rebutting FDIC's burdens of proof or defenses.

126.    In SF-3330-12-0711-I-1, Judge Slizeski decided before the hearing that Plaintiff's prior work experience was "very different" from a position for which he applied and was found not qualified.

127.    Judge Slizeski deliberately interrupted Plaintiff's direct examination of FDIC witnesses when he sought to impeach perjurious testimony. Judge Slizeski hijacked Plaintiff's examination, asking FDIC witnesses easy, open ended questions that defense counsel might ask, giving them the opportunity to make lengthy, self-serving narrative responses.

128.    Judge Slizeski relied on obvious FDIC witness perjury in his decisions. FDIC witness Catherine Hand lied claiming she had "first-hand" experience with Plaintiff's prior duties as an Associate Professor of Leadership, but under examination she described only second-hand, incredible sources of knowledge; Judge Slizeski's decision claimed Hand had "first-hand experience." Judge Slizeski credited FDIC witness Patty Evans who signed a deliberately misleading declaration leading the Board to believe she had reviewed Plaintiff's work experience when determining he lacked minimum education. Under examination, Evans admitted she did this only after Agency Counsel told her about the litigation and Plaintiff's allegations. Hand got caught red-handed under examination misstating Agency Counsel's false, contrived interpretation of an OPM policy clearly showing Plaintiff was educationally qualified.

129.    In SF-4324-14-0598-I-3, Judge Slizeski deliberately overlooked substantial evidence of disparate treatment and perjury by subject-matter expert Yan Lee, Donna Brown, and Monica Cain in a USERRA appeal. In a parallel discrimination case for the same nonselection using the same burdens of proof, an EEOC administrative judge found FDIC liable for discrimination on the basis of age and sex, and retaliation. The EEOC judge found all five FDIC witnesses, including Lee and Cain, not credible.

130.    In SF-3330-12-0386-I-1, Judge Slizeski refused to equitably toll the time to file a complaint under the Veterans Employment Opportunity Act when evidence showed FDIC concealed the evidence of a violation for four years. See *Glus v. Brooklyn E. Dist. Terminal,* 359 U.S. 231, 232 (1959). The evidence concealed showed an obvious failure to credit four years of Plaintiff's military service interrupting his civilian profession as an economist.

131.    In DC-1221-18-0070-W-1, Judge Lindsay Young Harrell refused to sanction FDIC for an untimely agency response, denied Plaintiff discovery, and dismissed his individual right of action appeal based on inapposite and superseded precedent in *Rzucidlo v. Department of the Army,* 101 M.S.P.R. 116, ¶ 18 (2006).

132.    In DC-1221-20-0720-W-1, Administrative Judge Kasandra Robinson Styles ignored Board precedent in *Loyd v. Dep't of the Treasury,* 69 M.S.P.R. 684, 688 (1996) in finding Plaintiff made no protected whistleblower disclosures. She also erroneously relied on precedent in *Rzucidlo.*

133.    In DC-0752-20-0790-I-1 Judge Styles cited clearly inapposite precedent in *Scoggins v. Dep't of the Army,* 123 M.S.P.R. 592 (2016) to deny Plaintiff discovery into the motives of people to retaliate and to demonstrate his reasonable belief his disclosures evidenced violations of law, rule, and regulation. Judge Styles claimed the information was historical and too distant in time to

establish causation. Aside from Judge Styles deliberately misrepresenting the reason for requested discovery, 5 U.S.C. §2302(f)(1) expressly states no disclosure will be excluded from protection because "of the amount of time which has passed since the occurrence of the events described in the disclosure." *Scoggins* pertained to the proximity in time between a protected disclosure and a retaliatory personnel action, and it had nothing to do with the time between a violation of law and the disclosure.

134.    Judge Styles conduct legal research on FDIC's behalf into a prior IRA appeal, and she asserted a defense of collateral estoppel FDIC had waived by not raising it. Collateral estoppel was also irrelevant to the case.

135.    In DC-3330-14-0615-I-1, Judge Michelle Hudson dismissed Plaintiff's appeal for failure to make a nonfrivolous allegation of a veterans preference violation. While MSPB reversed her finding, MSPB nevertheless dismissed the appeal in violation of its own precedent, based on a selecting official's self-exculpatory sworn declaration that Plaintiff never had the opportunity to rebut or impeach. The Board falsely stated, "appellant was provided a full and fair opportunity to develop the record on his VEOA claim below."

**CLAIM ONE**
Petition for a Writ of Mandamus

136.    Plaintiff realleges all foregoing facts and incorporates them herein by reference.

137.    Congress explicitly enacted the interim relief statute in 5 U.S.C. §7701(b)(2) to prevent the harm Plaintiff has suffered for more than fifteen months.

138.    Plaintiff became a prevailing party on September 30, 2021, in his adverse action appeal when the administrative judge ordered FDIC to cancel Plaintiff's suspension effective April 8, 2021.

139.    When FDIC petitioned for review to the Board on November 4, 2021, this triggered Plaintiff's clear and indisputable entitlement to interim relief pending the outcome of any petition for review, consisting of canceling his suspension, and providing Plaintiff with pay, compensation, and all other benefits as terms and conditions of employment effective September 30, 2021.

140.    "All other benefits as terms and conditions of employment" should be broadly construed to include all the same benefits and treatment as any other employee in good standing and returning Plaintiff to the *status quo ante*.

141.    Defendants had a clear and indisputable ministerial duty under law and regulation to include a statement on interim relief in the initial decision, and they failed to perform that duty.

142.    Plaintiff's appeal had no similarities to cases in which MSPB found interim relief inappropriate.

143.    MSPB's Regional Director, Washington Regional Office, and Clerk of the Board all failed to perform clear and indisputable duties to review the initial decision for compliance with law, rule, and regulation.

144.    The Clerk of the Board failed to perform its clear and indisputable delegated ministerial and adjudicative duties to rule on Plaintiff's *Motion for Interim Relief* – a purely procedural motion requiring no adjudication of the merits of his case or FDIC's petition for review.

145.    Because Plaintiff provided FDIC with all the information it demanded, FDIC should be prohibited from seeking additional medical information.

146.    Because FDIC may not discipline Plaintiff again for the same factual bases in its 2020 *Proposal*, FDIC should be prohibited from taking additional disciplinary actions.

147.    Because FDIC's computer network contains an enormous amount of information and systems for Plaintiff to enjoy all the benefits of his employment, FDIC should be prohibited from barring Plaintiff from that network.

148.    A writ of mandamus is strongly in the public interest because Plaintiff is a prevailing whistleblower, explicitly protected from harm by Congress and serving the public interest.

149.    No other adequate remedy exists under the law.

**CLAIM TWO**
Declaratory and Injunctive Relief under the Administrative Procedure Act

150.    Plaintiff realleges all foregoing facts and incorporates them herein by reference.

151.    The administrative judge, Washington Regional Office, Office of Regional Operations, and the Clerk of the Board all had statutory, regulatory, and delegated ministerial duties to ensure timeliness of the appeals, and all failed to perform these duties.

152.    Plaintiff was entitled to a decision in his adverse action appeal on December 5, 2020 or, after amending the appeal to a mixed case, no later than May 6, 2021. Defendants negligently exceeded the statutory and regulatory processing standards between 147 and 239 days.

153.    Plaintiff lost gross pay from these delays of approximately $112,558—$183,002, based on Plaintiff's approximate annual salary of $199,465.[6]

154.    Plaintiff and his wife incurred medical and vision expenses during this putative period of entitlement to interim relief that would have been paid for by FDIC employee insurance had Defendants ordered interim relief.

---

[6] Actual damages to be determined at trial.

155.    Title 5, C.F.R. §1201.111(b)(4) violates 5 U.S.C. §7701(b)(2)(A) because Congress provided interim relief to prevailing appellants if *any* party files a PFR, not just the opposing party.

156.    Plaintiff has no other adequate remedy at law.

## CLAIM 3
Violations of Fifth Amendment & Implied Cause of Action under 5 U.S.C. §2301—2302

157.    Plaintiff realleges all foregoing facts and incorporates them herein by reference.

158.    Plaintiff is a white, male, Republican.

159.    Plaintiff was falsely accused of sexual harassment by two female FDIC interns in 2011.

160.    FDIC violated Plaintiff's right to due process by punishing Plaintiff for allegations of sexual harassment two weeks prior to questioning him and without conducting a prompt, thorough, and impartial investigation.

161.    Plaintiff sought relief from MSPB for dozens of personnel actions stemming from FDIC's continuous discrimination, retaliation, whistleblower reprisal, and veterans preference violations from 2011 to the present because of those sexual harassment allegations.

162.    Plaintiff filed fifteen appeals with the MSPB.

163.    MSPB dismissed or denied relief in all Plaintiff's appeals.

164.    A vastly disproportionate number of MSPB administrative judges issuing adverse rulings in Plaintiff's appeals were Democrats (86.7%) compared to their share of the national population (30%).

165.    A vastly disproportionate number of all current or recent MSPB administrative judges are Democrats (74%).

166.    Campaign donations show a highly disproportionate amount of MSPB employee donations to Democratic Party candidates, PACs, committees, and causes, representing 79% of MSPB donors, 94% of donations, and 82% of the total value of donations.

167.   This Court may take judicial notice that Democrats are particularly sensitive to allegations of sexual harassment by women against men, and strongly favor women's claims regardless of the insufficiency of evidence or the existence of exculpatory evidence.

168.   Upon information and belief, all MSPB administrative judges have been prejudiced by the allegations of sexual harassment against Plaintiff, his political affiliation, and for acting *pro se*.

169.   Since 2012, Defendants have routinely violated Plaintiff's rights to due process in his appeals by refusing to compel discovery unlawfully withheld, preventing Plaintiff from admitting evidence supporting his burdens of proof or detracting from agency's burdens of proof, denying depositions and hearing witnesses, relying on obviously inapposite legal authorities including MSPB precedential decisions and decisions superseded by statute, wrongly favoring FDIC in nearly every discretionary decision, relying on obvious FDIC witness perjury, prejudging the merits of the case, conducting legal research and asserting waived defenses on behalf of FDIC, failing to disqualify or sanction FDIC lawyers who violate laws, rules, and regulations, including felony crimes, and other violations of law, rule, and regulation, and abuses of authority.

170.   An implied cause of action is consistent with the underlying purposes of 5 U.S.C. §2301— 2302 and the Fifth Amendment right to due process.

171.   The prohibition against political discrimination sits right alongside familiar protections from arbitrary action on the bases of race, color, religion, sex, national origin, age, handicapping condition, and marital status.

172.   Federal policy seeks to maintain a workforce consistent with merit system principles and free from prohibited personnel practices. Civil Service Reform Act, Pub.L. 95-454 (1978), 92 Stat 1112. Employees should receive fair and equitable treatment without regard to political affiliation. 92 Stat. 1114.

173.    Political and sex discrimination and bias against a *pro se* litigant by MSPB denied Plaintiff his right to due process under the Fifth Amendment of the United States Constitution.

174.    Defendants' wrongful denials of Plaintiff's appeals cost Plaintiff hundreds of thousands of dollars in lost pay and substantial opportunities for promotion.

175.    Defendants' wrongful denials let agency responsible management officials, witnesses, and attorneys get away with literally hundreds of felony crimes, torts, abuses of authority, veterans' preference violations, false signings, and other violations of Fed.R.Civ.P.

176.    Plaintiff has no other remedy under the law to challenge political and sex discrimination and bias against *pro se* litigants by MSPB that adversely affected his rights.

### PRAYER FOR RELIEF

**WHEREFORE** Plaintiff requests that the court issue judgment and a writ of mandamus with the following orders, declarations, injunctions, and prohibitions:

1.    DECLARE that Defendants negligently or deliberately failed to perform ministerial duties required by law, rule, and regulation to grant Plaintiff interim relief effective on the date of the initial decision.

2.    DECLARE that Defendants negligently or deliberately failed to timely issue an initial decision in Plaintiff's appeals DC-1221-20-0720-W-1 and DC-0752-20-0790-I-1.

3.    DECLARE that Defendants negligently or deliberately failed to decide on Plaintiff's *Motion for Interim Relief* filed on February 17, 2022, depriving Plaintiff of interim relief.

4.   ORDER Defendants to immediately issue a *nunc pro tunc* order to FDIC to grant Plaintiff interim relief effective September 30, 2021, with back pay and benefits to that date.[7]

5.   After discovery and judgment, DETERMINE the date by which Defendants should have issued their initial decision, modify the effective date in 4 above, and ORDER Defendants to issue a *nunc pro tunc* order to FDIC to provide Plaintiff interim relief from that date until September 29, 2021.

6.   DECLARE Plaintiff's right and the rights of all prevailing whistleblowers to expeditious review by the Board or its delegees of any denial of or failure to provide interim relief pursuant to 5 U.S.C. §7701(b)(2).

7.   ORDER Defendants to immediately and as soon as possible promulgate regulations, policies, and procedures to ensure prevailing parties receive interim relief, and to expedite review of any failure to provide or denial of interim relief.

8.   ORDER Defendants to immediately and as soon as possible promulgate regulations, policies, and procedures to prevent untimely resolution of appeals in the future.

9.   ORDER Defendants to amend 5 C.F.R. §1201.111(b)(4) to say, "A statement, if the appellant is the prevailing party, as to whether interim relief is provided effective upon the date of the decision, pending the outcome of any petition for review filed by any party under subpart C of this part;" [correction underlined]

---

[7] The interim relief statute provides no back pay to Plaintiff between April 8, 2021, and September 29, 2021. 5 U.S.C. §7701(b)(2)(C). However, this Court may order *nunc pro tunc* relief including back pay to September 30, 2021, to which Plaintiff was entitled as a matter of law.

10. ORDER Defendants to expedite and decide as soon as possible FDIC's petition for review in DC-0752-20-0790-1 and Plaintiff's *Motion for Interim Relief* filed on February 17, 2022.

11. ORDER Defendants to expedite and decide as soon as possible any initial and final decisions in Plaintiff's appeals in DC-1221-20-0720-W-1 and DC-0752-20-0790-1 after any remand of these appeals by a district or circuit court or the U.S. Supreme Court.

12. ORDER Defendants to order FDIC to:

   a. Provide Plaintiff full remote access to FDIC's network and systems to the same extent as all other employees in good standing;

   b. Cease and desist from demanding additional medical information from Plaintiff on the bases underlying the 2020 decision to demand medical information;

   c. Cease and desist from disciplining Plaintiff for any of the bases underlying agency personnel actions in 2020;

   d. Cease and desist from further searches of Plaintiff's internet and computer activities or his personal property;

   e. Provide Plaintiff all benefits he would have been entitled to enjoy from September 30, 2021, or a sooner date determined by this Court, including but not limited to educational funding, professional dues, training opportunities, detail opportunities, promotions; notwithstanding any annual limits on those benefits

   f. Reimburse Plaintiff for all Plaintiff's and his wife's medical, dental, and vision expenses accrued from September 30, 2021, or a sooner date determined by this Court to the present;

g.  Cease and desist from taking disciplinary action against Plaintiff for defalcation of debts or for causing a loss to an insured financial institution;

h.  Destroy and not act upon any authorization for release of medical information Plaintiff previously signed, and destroy any medical records FDIC obtained with such authorizations, except as required for the preservation of evidence pertinent to Plaintiff's claims or FDIC defenses;

i.  Provide any other relief from FDIC this Court deems just.

13.  VACATE all adverse MSPB decisions in Plaintiff's appeals and ORDER rehearing by unbiased administrative judges or the Board itself.

14.  AWARD Plaintiff his costs for this complaint and for his petition for a writ of mandamus to the U.S. Court of Appeals for the District of Columbia Circuit, *In re Robert M. Miller,* 22-1232 (D.C. Cir.)

15.  Any other relief this Court deems just.

Plaintiff verifies under penalty of perjury of the laws of the United States that the foregoing facts are true and correct, as if by affidavit. 28 U.S.C. §1746.

EXECUTED January 3, 2023.

Robert M. Miller, Ph.D.
4094 Majestic Ln., #278
Fairfax, VA 22033
(415) 596-2444
RobMiller44@hotmail.com